492 P.2d 1172

Daniel J. CONDON, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

County of Maricopa, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 10556–PR.

Supreme Court of Arizona, In Banc.

Jan. 14, 1972.

John S. Schaper, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent.

Robert K. Park, Chief Counsel by Harlan J. Crossman, Phoenix, for respondent carrier.

CAMERON, Justice.

This court granted Dr. Condon's petition to review a decision of the Court of Appeals affirming a non-compensable award of the respondent Industrial Commission. Condon v. Industrial Commission, 14 Ariz. App. 481, 484 P.2d 634 (1971).

We are called upon to determine:

1. whether the hearing officer abused his discretion in granting an additional hearing after two previous hearings, and

2. whether testimony of a medical expert who had not personally examined the petitioner was substantial evidence.

The petitioner, Dr. Daniel J. Condon, was employed by Maricopa County in February, 1968, as a medical examiner. In connection with his employment, Dr. Condon was attending meetings of the National Association of Medical Examiners and the American Academy of Forensic Sciences in Chicago. Approximately 15 or 20 minutes after taking off on the return flight to Phoenix, Dr. Condon collapsed in his seat. An emergency landing in Kansas City was made and Dr. Condon was rushed to a hospital where he was treated.

As a result of this accident, Dr. Condon has limited motor action and speech difficulties. Dr. Condon contends he is suffering from dysbarism and aero-embolism brought on by a rapid change in the barometric pressure on the flight from Chicago.

On 30 September 1968, the Commission issued an award denying compensation. This was protested and the first hearing was held on 27 February 1969, at which time Dr. L. D. Beck, who had attended Dr. Condon, testified. Dr. Beck, an expert in aviation medicine and a consultant for TWA and American Airlines, testified that Dr. Condon's symptoms were from a dysbarism resulting from a change in air pressure from the flight. Another attending physician, Dr. John Eisenbeiss, a specialist in neurological surgery, also testified on behalf of petitioner. In response to the question of whether he had found any indications that Dr. Condon had aero-embolism or suffered from dysbarism he testified:

"There will be no way on examining a patient a month afterward to make a diagnosis or to negate it. My diagnosis was made on the basis of his past history, having seen him previously, his known hypertension and his neurological findings that persisted, his normal electroencephalogram, and I couldn't rule in or out dysbarism."

An additional hearing was held 21 May 1969, at which time Dr. Maier I. Tuchler, with specialties in neurology and psychiatry, testified that he had a commercial pilot's license and had been active in aviation medicine for some 20 years. Dr. Tuchler had seen the petitioner just before he boarded the flight in Chicago. This was about an hour before petitioner suffered his attack. He testified in favor of the petitioner.

In August 1969, the pressurization figures from TWA were finally received. These figures, together with the file including the testimony of Drs. Beck, Eisenbeiss and Tuchler, were sent to Dr. E. M. Roth, an expert in aero-space medicine and a member of the NASA Advisory Committee on Biotechnology.

Dr. Roth submitted an extensive report which stated his opinion that petitioner's disability was caused by a pre-existing physical condition.

The Fund, over petitioner's objection, requested an additional (3rd) hearing to present Dr. Roth's testimony. This hearing was held on 14 October 1969. On cross-examination, the Doctor testified:

"Q  Dr. Roth, let me ask you first of all what was the source of all the information upon which you prepared your critique of this case?

    *    *    *    *    *    *

"A  It was a package of the previous hearings and all additions and testimony to the previous hearings that was given to me by Mr. Jenckes, sent to me by mail.

"Q  Did Mr. Jenckes ask you any specific questions concerning this matter which he wanted you to answer?

"A  The only specific questions that he directed to me were whether I thought Dr. Condon's presence on board the aircraft either caused or precipitated his symptoms and whether his symptoms could have been caused or precipitated by aero-emboli."

Based largely upon Dr. Roth's testimony, the referee stated in his report:

"The aforementioned medical testimony is in conflict and where the evidence is in conflict or different inferences may be drawn therefrom, the Commission is at liberty to choose either and its conclusions will not be disturbed unless it is wholly unreasonable. * * *

"It is the opinion of this Hearing Officer therefore that the applicant did sustain an incident of basilar artery ischemia on February 27, 1968 that was the result of his pre-existing arteriosclerosis and was not an injury by accident arising out of and in the course of·his employment. It is my opinion also that the incident of basilar artery ischemia was not aggravated, precipitated or accelerated by his presence on the jet aircraft on February 27, 1968."

The Commission adopted the conclusion of the referee and petitioner appealed by writ of certiorari.

## GRANTING THE NEW HEARING

■ We agree with the conclusion of the Court of Appeals that it was not an abuse of discretion for the Commission to grant a further hearing and the decision of the Court of Appeals on that point is affirmed.

## WAS THE TESTIMONY SUBSTANTIAL?

■ Whether the testimony of a medical expert is substantial for the purpose of creating a conflict with the testimony of the examining physician must be determined on an individual basis, depending upon the patient, the nature of the injury, and the nature and extent of testimony itself.

■ A review of the file in this case indicates to us that neither the petitioner nor the expert had anything to gain by a physical examination of the petitioner. The condition of the petitioner is not in dispute and Dr. Roth accepted the medical history as set forth in the files. On that basis, we are willing to affirm the award of the Industrial Commission. This does not mean, however, that if there is something to be gained by a physical examination of the petitioner, particularly as an aid in diagnosing the present physical condition of the petitioner, the Commission may disregard the testimony of those who have examined the petitioner and base their decision upon a medical expert who has reviewed the file without a physical examination. Under those circumstances, the testimony of the

non-examining expert would not be substantial and would not be sufficient to support or create a conflict in the medical testimony.

The opinion of the Court of Appeals in 14 Ariz.App. 481, 484 P.2d 634 (1971) is vacated, and the award of the Industrial Commission is affirmed.

HAYS, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.