556 P.2d 827

**Roy A. CASH, Deceased, Betty Mae Cash, widow, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Navajo Freight Lines, Respondent Employer, Navajo Freight Lines, c/o United Trans. Adj., Inc., Respondent Carrier.**

**NAVAJO FREIGHT LINES, Cross-Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Roy A. Cash, Deceased, Betty Mae Cash, widow, Respondent Employee.**

**No. 1 CA–IC 1390.**

Court of Appeals of Arizona, Division 1, Department C.

July 27, 1976.

---

Jones, Teilborg, Sanders, Haga & Parks, by William R. Jones, Jr., Joseph L. Moore, Phoenix, for respondent employer and cross-petitioner Navajo Freight Lines.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Davis, Eppstein & Tretschok by Dale D. Tretschok, Tucson, for petitioner and respondent employee Cash.

## OPINION

WREN, Judge.

Cross-petitions for writ of certiorari bring before us for review certain alleged errors of the Industrial Commission in its award for a compensable claim entered April 24, 1975: (1) abuse of discretion in refusing to delay start of hearing until arrival of counsel; (2) refusal to schedule hearing for testimony of doctor for whom a subpoena had been requested; and (3) failure to award compensation for the period between the heart attack and death.

The facts material for the Court's response to the issues raised are as follows. At the request of the applicant, Roy A. Cash, deceased, Betty Mae Cash, widow (Cash), a hearing on the claims of the employee and widow was scheduled for October 11, 1974 in Albuquerque, New Mexico to take the testimony of Dr. Hugh Bass, M.D., employee's attending physician, and certain lay witnesses. A second hearing was set for December 30, 1974 in Kingman, Arizona for the testimony of Dr. Jay Standifer, M.D., who had also examined the employee. Counsel for both parties had previously requested additional hearings; counsel for the cross-petitioner, respondent employer and carrier, Navajo Freight Lines (Navajo) having requested on September 24, 1974 a subpoena and an additional hearing for the testimony of Dr. Allen Cohen in Phoenix, Arizona, and counsel for Cash having requested one for the testimony of Dr. Alfred Dubin in Tucson, Arizona.

The starting time for the Albuquerque hearing was scheduled for 9:30 a.m. but it was delayed for approximately 30 minutes due to the non-arrival of counsel for Navajo. Around 10:00 a.m. counsel telephoned from the Albuquerque airport to inform the hearing officer that he had been delayed because of the late arrival of the commercial jetliner in which he was traveling and that he was proceeding directly to the hearing. However, the hearing officer refused to delay longer the examination of Dr. Bass, who had been waiting to testify, and proceeded with the hearing as to both the doctor and a lay witness. When counsel arrived during the direct examination of the second lay witness, Dr. Bass had been excused and had departed the hearing. The attorney for Navajo then objected to the hearing officer's deni-

al of an opportunity to cross-examine the doctor.

At the conclusion of the hearing, the hearing officer queried Navajo as to whether its subpoena request for Dr. Allen Cohen was necessary, to which Navajo responded:

"MR. TEILBORG: I can make a decision on what was just stated, and that is a—that we would very definitely want Doctor Cohen to testify, particularly after having been advised this morning that —of the nature of Doctor Bass' testimony, so any cancelling out theory, I think, is without merit."

It is apparent from the record that the "cancelling out theory" referred to the inference by Cash that Dr. Cohen's testimony would be controverted by that of Dr. Dubin's and that the net effect would therefore be cumulative and of no value to the record. The decision as to whether to grant continued hearings for the testimony of the two doctors was deferred until a later time.

The second and final hearing for the purpose of Dr. Standifer's testimony was held as scheduled in Kingman. At the commencement thereof, the hearing officer denied the requests for the testimony of Dr. Cohen and Dr. Dubin. Navajo objected to the ruling as to Dr. Cohen. Dr. Standifer then testified to a causal relationship between the applicant-employee's death and his employment, and based his opinion partially upon the transcript of the testimony of Dr. Bass. At the conclusion of Dr. Standifer's testimony counsel for Navajo reiterated his objection to the denial of the subpoena request for Dr. Cohen, whom he stated to be a specialist—a cardiologist—as distinguished from Dr. Bass and Dr. Standifer, whom he described as general practitioners. The hearing officer again refused the request, stating that it

was his considered judgment that: "[Dr. Cohen would not] contribute materially to the hearing, nor would [his] testimony rise to the level of overriding the testimony of the two doctors who actually examined the deceased . . . ."

He also added:

". . . . but I would say that if I even ignored the testimony of Dr. Bass, who counsel didn't have an opportunity to cross-examine, the evidence from Dr. Standifer still supports the position of the applicant."

The hearing officer then noted that his refusal was also based upon the fact that Dr. Cohen's testimony would be merely a "file review", since the doctor had not examined the employee, and his testimony would therefore be inadmissible under *Pais v. Industrial Commission,* 108 Ariz. 68, 492 P.2d 1175 (1972); *Condon v. Industrial Commission,* 108 Ariz. 65, 492 P.2d 1172 (1972); *Rutledge v. Industrial Commission,* 108 Ariz. 61, 492 P.2d 1168 (1972).

In Finding No. 5 under his Decision and Award he referred to the fact that neither of the subpoenaed doctors had had any opportunity to examine or treat the decedent, and that based upon the other expert medical testimony (Drs. Bass and Standifer), it was his opinion that information obtained solely from a file review would not materially add to or alter the evidence of the physicians who had personally treated the deceased. In Finding No. 4 he further opined that it was dubious that "Dr. Bass would have altered his expressed opinion as a result of cross-examination."

Navajo asserts that it was an abuse of discretion for the hearing officer to proceed with the Albuquerque hearing in the absence of Navajo's counsel, thereby precluding the right to cross-examination in violation of A.R.S. § 23–941(F) and Rule 56[1] of the Rules of Procedure for Work-

---

1. We feel the terminology of Rule 56 indicates its obvious inapplicability to these facts and therefore footnote the rule without further comment.

"RULE 56. Continuance of Hearing

(a) The granting of a continuance of a hearing shall be discretionary with the presiding hearing officer.

men's Compensation Hearings; and that the Commission's refusal to hold another hearing in Phoenix, Arizona for the testimony of Dr. Cohen was also contrary to the provisions of the cited statute and rule.

Cash contends in the petition that it was inconsistent for the hearing officer to find a causal relationship between the employee's employment and his heart attack, and then award medical benefits, but not compensation, for the period between the heart attack and death. Since we have concluded that the hearing officer committed error in refusing to allow the testimony of Dr. Cohen, and that the award must be set aside, we need not consider the alleged inconsistency.

## ABUSE OF DISCRETION

As to Navajo's first contention, we do not agree that the hearing officer abused his discretion in refusing to further delay the start of the Albuquerque hearing, and in excusing Dr. Bass prior to the arrival of Navajo's counsel. It is the duty of the parties and their counsel to be present at the time a hearing is scheduled to commence. The fact that counsel may not be at fault in not making a timely appearance does not deprive the hearing officer of discretion to proceed with the hearing and the examination of witnesses. Here he delayed starting the proceedings because of the absence of Navajo's attorney, and then was told that there would be an additional delay before he would be able to arrive. Ample notice of the hearing had been given and counsel well knew the distance involved. Moreover, delays in ar-

rival time of commercial airlines is a well known factor of life to be taken into consideration in planning a timely arrival.

Within the same framework of our inquiry here, however, is the question of whether Navajo's fundamental right of cross-examination was denied because Dr. Bass was excused from the hearing prior to counsel's arrival. The time of commencement of a hearing, the examination and cross-examination of witnesses and delays and continuances relevant thereto are matters within the sound discretion of the hearing officer, and he is not deprived of jurisdiction to proceed by the absence of counsel if an opportunity to be present has been accorded. 75 Am.Jur.2d Trial § 52.

The right to cross-examine witnesses in a proceeding before the Industrial Commission must be distinguished from the opportunity to cross-examine. Although the opportunity cannot be restricted by the Commission the right can be waived by the party. Here, even though the *effect* of the ruling was to deprive the late appearing attorney an opportunity to cross-examine Dr. Bass, we find no abuse of discretion in excusing Dr. Bass when the direct examination had been concluded and counsel still had not entered an appearance. His untimely appearance constituted a waiver of the right to cross-examine.

## REFUSAL OF TESTIMONY OF DR. COHEN

Although not argued by counsel we feel the facts here compel consideration of Rule 41(a) of the Rules of Procedure for

(b) If at the conclusion of a hearing held by a hearing officer, any interested party desires a further hearing for the purpose of introducing further evidence, the party shall state specifically and in detail the nature and substance of the evidence desired to be produced, the names and addresses of the witnesses and the reason why the party was unable to produce such evidence and such witnesses at the time of the hearing. If it appears to the presiding hearing officer that with the exercise of due diligence, such evidence or witness could have been produced, or that such evidence or testimony would be cumulative, immaterial or unnecessary he may deny the request for a continued hearing. He may, on his own motion, continue a hearing and order such further examinations or investigations as, in his discretion, appear warranted."

Workmen's Compensation Hearings. The rule reads in pertinent part:

"Rule 41 Witnesses; Requests for (a) . . . If requested by the presiding hearing officer, the party requesting that the subpoena be issued shall present a written statement stating the substance of the testimony expected of the witness. If such testimony appears to be material and necessary, the presiding hearing officer *shall* issue the subpoena requested."

(Emphasis supplied.)

An interpretation of this rule on a somewhat analogous situation has been the subject of recent decision by this Court, *Reinprecht v. Industrial Commission*, 27 Ariz. App. 7, 550 P.2d 654 (1976). As we therein noted: "[a]lthough the rule is not a model of clarity we would interpret it as permitting the hearing officer to refuse issuance of a subpoena only when the requested statement is not forthcoming or where it is clearly shown in the statement itself that the solicited testimony would not be material and necessary."

Cash supports the hearing officer's refusal to honor the request for the Dr. Cohen subpoena and the Phoenix hearing by urging that Navajo made no offer of proof as to what the doctor would testify to and therefore there was no way to determine if Navajo was prejudiced by the refusal. In a sense this is true and a detailed offer of proof, preferably in the form of a medical report, would have been much preferred. But there is no such provision or requirement in the Commission's Rules of Procedure. See *Gordon v. Industrial Commission*, 23 Ariz.App. 457, 533 P.2d 1194 (1975); Rule 41(a).

Moreover, in his letter of September 24, 1974, requesting a subpoena for Dr. Cohen, counsel for Navajo had noted: "Dr. Cohen will testify on hypothetical questions regarding causal connection after the full information is gathered from other physicians." Also, at the Albuquerque hearing counsel indicated to the hearing officer in response to the latter's question, that he

considered Dr. Cohen's testimony essential because of the testimony of Dr. Bass. There was no further inquiry forthcoming from the hearing officer regarding the *substance* of the testimony counsel expected to be elicited from Dr. Cohen, as required by the terminology of Rule 41(a) before the subpoena could be refused.

A.R.S. § 23–941(F) provides:

"Except as otherwise provided in this section and rules or procedure established by the commission, the hearing officer is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure and may conduct the hearing in any manner that will achieve substantial justice."

In *Pauley v. Industrial Commission*, 10 Ariz.App. 315, 317, 458 P.2d 519, 521 (1969) it was held that:

"A party to an Industrial Commission hearing not only has the right to cross-examine the witnesses, but also has the right to present evidence of his own. To hold otherwise would be to deny the party the fair and impartial hearing to which he is entitled. This Court has stated:

'It is well settled that the law contemplates that the orders and awards of the Commission shall be made after a full consideration by it of all the facts of the case and shall be its deliberate act. It is their duty to consider all of the evidence and bring to bear their best and most conscientious judgment with a view of reaching a just, fair, and equitable conclusion.' *Wilson v. Wilson*, 1 Ariz.App. 77, 79, 399 P.2d 698, 700 (1965)."

In the making of awards the function of the Industrial Commission is judicial in nature and is governed by the same general principles as judgments of courts including the right of any person to his day in court and an opportunity to present his case fully and freely. *International Metal Products Div. v. Industrial Commission*, 99 Ariz. 73, 406 P.2d 838 (1965);

*Martin v. Industrial Commission*, 88 Ariz. 14, 352 P.2d 352 (1960).

██ It is clear that although administrative agencies may be relieved from observance of strict common law rules of evidence their hearings must still be conducted consistently with fundamental principles which inhere in due process of law. See *Jones v. Industrial Commission*, 1 Ariz. App. 218, 401 P.2d 172 (1965). It is a fundamental right of parties to an Industrial Commission hearing to present witnesses in their own behalf. *Martin v. Industrial Commission*, supra.

In our opinion the hearing officer's reliance on *Rutledge*, supra; *Condon*, supra; and *Pais*, supra; is misplaced.

As noted by Justice Cameron in *Condon*:

"Whether the testimony of a medical expert is substantial for the purpose of creating a conflict with the testimony of the examining physician must be determined on an individual basis, depending upon the patient, the nature of the injury, and the nature and extent of testimony itself." 108 Ariz. at 67, 492 P.2d at 1174.

Further explanation is given in *Rutledge*:

"It is one thing, in an Industrial Commission matter, for an expert to examine medical records, reports, and (where necessary for a determination of the matter) the petitioner, and then testify on matters peculiarly within his expertise. It is another thing to merely review the Commission's medically incomplete file and comment on the testimony of the examining physician." 108 Ariz. at 64, 492 P.2d at 1171.

The opinion goes on to state:

"We do not by this decision hold that the testimony of a doctor who has not examined the claimant can never be substantial. It must, however, be something more than a review of the file and comment upon the testimony of previous witnesses." *Id.*

We do not read *Rutledge* as prohibiting the testimony of a medical expert which is based upon objective findings and test results in the Commission file. Here there was an ample medical record within the file available to Dr. Cohen which would meet the test of "substantial evidence" defined by our Supreme Court. It has not been brought to our attention that Dr. Cohen would be reviewing only a "medically incomplete file" proscribed by *Rutledge*.

██ The answer to a question of causal relationship of employment and heart attack before the Commission lies solely within the province of medical knowledge. In resolving it the hearing officer must rely upon expert medical testimony. *Pauley v. Industrial Commission*, supra. If a conflict in the medical testimony arises the hearing officer of course must resolve that conflict, but he is not permitted to surmise and conjecture as to how the conflict would be resolved *if* one were to arise, and then proceed to exclude competent, material testimony which might create the conflict. Many factors enter into the resolution of such a medical issue; i.e. consideration of qualifications of the experts in order to determine which one should be given the greater weight. *Meeks v. Industrial Commission*, 7 Ariz. App. 150, 436 P.2d 928 (1968).

██ Certainly it was beyond the purview of the judicial power of the hearing officer to assert as he did here, that even if he permitted the testimony of Dr. Cohen his mind would not be changed. He could not know the substance of Dr. Cohen's testimony nor his credentials for expressing an opinion on the medical reports in the file. To predetermine the weight which such testimony would have made on conflicting evidence in the highly technical field of cardiology and the nebulous concept of causal relationship between employment and a heart attack resulting in death was a manifest violation of Navajo's right to its day in court. Until the evidence had been heard by him there could be no assumption by the hearing officer as to how the ex-

pected conflict in medical testimony would be resolved. He cannot be presumed to have reached the right result if he erroneously excluded evidence which might have swayed that result.

Since we have held that the testimony of Dr. Cohen, would reflect more than a mere file review, it follows that Navajo was entitled as a matter of right to place the testimony of Dr. Cohen before the hearing officer for his consideration. The deprivation of that right was in derogation of Rule 41(a) and the substantial justice requirement of § 23-941(F).

The award is therefore set aside.

HAIRE, C. J., Division 1, and NELSON, J., concurring.