NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

THOMAS CRAIG, *Petitioner Employee,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

CITY OF PHOENIX, *Respondent Employer,*

CITY OF PHOENIX, *Respondent Carrier*.

No. 1 CA-IC 23-0002
FILED 01-09-2024

Special Action - Industrial Commission
ICA Claim No. 20212770223
Carrier Claim No. 21G10J874066
The Honorable C. Andrew Campbell, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Ahwatukee Legal Office P.C., Phoenix
By David L. Abney (argued)
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Lundmark, Barberich, La Mont & Puig, P.C., Phoenix
By R. Todd Lundmark, David T. Lundmark (argued)
*Counsel for Respondent Employer and Insurance Carrier*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge D. Steven Williams and Judge Samuel A. Thumma joined.

---

**M c M U R D I E**, Judge:

¶1        Phoenix Police Sergeant Thomas Craig died from COVID-19 complications. Sergeant Craig's widow, Lynn Craig, asks us to review the Industrial Commission of Arizona's ruling that she failed to prove Sergeant Craig contracted the virus at work. We set aside the award because the Commission's procedural rulings did not achieve substantial justice as required by A.R.S. § 23-941(F).

## FACTS[1] AND PROCEDURAL BACKGROUND

¶2        Sergeant Craig worked for the Phoenix Police Department. In 2021, he was the administrative sergeant of the property management unit responsible for maintaining the building and supervising a squad. He mostly worked at his desk but interacted daily with co-workers and the public. On July 19, 2021, Sergeant Craig tested positive for COVID-19. He was hospitalized on July 25, released soon after, and then hospitalized again from July 28 until he died on September 3, 2021, from complications of the viral infection.

¶3        Before he died, Sergeant Craig filed a workers' compensation claim alleging he contracted COVID-19 while at work. After his death, Lynn Craig filed a death benefit claim. The City of Phoenix denied the claims. Lynn Craig contested those denials, and the Commission held an evidentiary hearing on both claims.

¶4        Lynn Craig testified that she and her husband did not go out much that summer but dined at sparsely filled restaurants perhaps twice a

---

[1]        "We consider the evidence in a light most favorable to sustaining the award." *Turner v. Indus. Comm'n*, 251 Ariz. 483, 484, ¶ 2 (App. 2021).

week. Their three adult children lived with them, and the children worked outside the home.

**¶5** Lynn Craig also testified that Sergeant Craig began feeling ill and fatigued on Saturday, July 10, 2021. He blamed his symptoms on allergies and went to work July 12, 13, and 14. He appeared well and did not complain to others of feeling ill during those days.

**¶6** On July 15 and 16, Sergeant and Lynn Craig attended a two-day investment seminar with a close friend, Vincent Del Franco. At least 30 people attended the workshop, with tables grouped by four or six persons in a large space. The event lasted about seven hours each day. The Craigs and Del Franco did not wear masks at the seminar, but some other attendees did. On Monday, July 19, Sergeant Craig did not feel well, left work early, and tested positive for COVID-19.

**¶7** Del Franco started feeling ill on July 21 or 22. Lynn Craig tested positive on July 28. Sergeant Craig did not go back to work after testing positive for COVID-19, and his condition worsened over the next weeks. He was admitted to the hospital with pneumonia on July 28 and remained in the hospital until his death five weeks later.

**¶8** Sergeant Craig's secretary, Jacqueline Shepard, testified that she worked with Sergeant Craig daily. She was out of the office on vacation in late June 2021 and returned to work on July 12. She worked with Sergeant Craig on July 12 and 13, but an injury prevented her from returning to work. She said Sergeant Craig typically held work meetings in his 12 x 12 office, sometimes closing the door. She also claimed that Sergeant Craig met with other supervisors in another 12 x 12 office. Shepard reported that Sergeant Craig often wore a mask because his office was not configured for two people to stay six feet apart. He usually met with others from outside the building, including officers and civilian vendors. Shepard maintained the Department failed to notify her that a close contact of hers had COVID-19 and that at least nine people were missing from Sergeant Craig's close contacts list.

**¶9** Others who worked with Sergeant Craig also testified. His supervisor said Sergeant Craig had no symptoms until July 19. He also testified that Sergeant Craig typically wore a mask when meeting others. The head of the police department's safety programs testified there was no report that anyone on Sergeant Craig's close contacts list tested positive for COVID-19 during July.

3

¶10 Lynn Craig and the City of Phoenix each called a testifying medical expert. Lynn Craig called Dr. Craig H. Smith, and the City of Phoenix called Dr. Daniel E. Brooks. Both experts reviewed medical records, documents, and Lynn Craig's statements about her husband's condition before his hospitalization.

¶11 Lynn Craig told Dr. Smith that Sergeant Craig was concerned that someone in his office, probably before July 10, was coughing a lot. This person was never identified. Lynn Craig learned this information from Sergeant Craig's brother, who said he learned it from Sergeant Craig when they met for a meal. A text message from Sergeant Craig's brother stated, "He [Sergeant Craig] mentioned something [about] someone in his office that had Covid when we were at breakfast on July 10th." Relying on Lynn Craig's information, Dr. Smith testified that this unknown coughing person was likely infected with COVID-19 and gave it to Sergeant Craig. Dr. Smith testified that it was statistically more likely that Sergeant Craig became infected at work because he "spent much more time with highly unknown individuals" at work and had a higher chance of infection "from individuals where we just didn't know if they were infected or not."

¶12 Dr. Brooks testified that based on what the medical records noted about the onset of symptoms and COVID-19's incubation period, Sergeant Craig was likely exposed around July 15 or 16—when he attended the financial seminar. Dr. Brooks testified that the proposed course of the disease, starting with the exposure around July 6, leading to a positive COVID-19 test result on July 19, and resulting in severe illness on July 25 when Sergeant Craig went to the hospital, would be a "very unique" course for COVID-19.

¶13 Particularly significant here is that the ALJ sustained hearsay objections to questions presented to Lynn Craig and Shepard during their testimony. Lynn Craig testified that Sergeant Craig was concerned about COVID-19 exposure from the person coughing at work. But the ALJ sustained the City's hearsay objection when she was asked about Sergeant Craig's awareness of the exposure. Similarly, the ALJ did not allow Shepard to answer questions about the coughing incident.

¶14 In a post-hearing memorandum provided before the evidence closed, Lynn Craig provided an offer of proof of the excluded testimony. *See* Ariz. Admin. Code R20-5-148(B). First, she avowed that if allowed to testify, she would testify that Sergeant Craig came home from work shortly before July 10 and told her that he met with someone in his office who was coughing and was concerned that this person had COVID-19. She would

4

also testify that on July 12, Sergeant Craig told her that the coughing person had tested positive for COVID-19. He never told her the person's name. She also would have testified that Sergeant Craig believed he contracted COVID-19 at work. Second, if allowed to testify, Lynn Craig avowed that Shepard would corroborate that Sergeant Craig thought he was exposed to COVID-19 by the unidentified person coughing in his office. Sergeant Craig told Shepard that the person had tested positive for COVID-19. Lynn Craig argued that substantial justice required that the testimony be received and considered by the ALJ. The City of Phoenix argued that the proposed testimony was unreliable.

¶15        The ALJ denied the admission of the proposed testimony because it was "essentially cumulative" and "even if allowed, does not support a factual determination that the unknown individual was COVID positive." After considering the evidence received, the ALJ denied compensability, concluding that Lynn Craig did not meet her burden of proof. The ALJ affirmed the decision without further findings or conclusions upon administrative review. This petition for special action review followed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

¶16        When reviewing a workers' compensation award, we defer to the ALJ's factual findings but review questions of law *de novo. See Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We affirm an ALJ's findings if any reasonable evidence theory supports them. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398-99 (1975).

¶17        "[D]eath or injury from COVID-19 is compensable where the statutory requirements for workers' compensation are met." *W. Millwork v. Indus. Comm'n*, 105 Ariz. Cases Dig. 47, 49, ¶ 1 (App. Sept. 21, 2023). The claimant seeking benefits must prove by a preponderance of the evidence that the infection arose out of and in the course of employment. *See* A.R.S. § 23-1021; *Yates v. Indus. Comm'n*, 116 Ariz. 125, 127-28 (App. 1977); *Warner v. Indus. Comm'n*, 78 Ariz. 317, 319 (1955).

¶18        The ALJ found that Lynn Craig failed to establish a compensable injury. But the ALJ refused to consider all the evidence offered. The ALJ did not allow testimony from Lynn Craig and Shepard that Sergeant Craig had told them that someone he met tested positive for COVID-19. We must determine whether the exclusion of the evidence was reversible error.

**¶19** "Parties to an Industrial Commission hearing have a fundamental right to present evidence to support or defend the claim." *Horan v. Indus. Comm'n*, 167 Ariz. 322, 326 (App. 1991); *see also Rosovich v. Indus. Comm'n*, 133 Ariz. 374, 375 (1982) ("A claimant should have an opportunity to develop the evidence relevant to the hearing."). The Arizona Rules of Evidence do not apply to a Commission hearing. Instead, a less formal standard for the admissibility of evidence applies, with the ALJ to "conduct the hearing in any manner that will achieve substantial justice." A.R.S. § 23-941(F). The statute relaxes evidentiary rules "so that the greatest amount of competent evidence [is] available to the Commission for its deliberation upon an award." *Gordon v. Indus. Comm'n*, 23 Ariz. App. 457, 460 (1975). The statute expands, rather than restricts, the evidence available to the ALJ. *See McBath & Young Wrecking Co. v. Indus. Comm'n*, 123 Ariz. 192, 194 (App. 1979).

**¶20** The ALJ may admit and rely on hearsay to support its findings. *Coulter v. Indus. Comm'n*, 198 Ariz. 384, 387 (App. 2000). To be sure, policies underlying the rules of evidence guide the ALJ's evidentiary rulings. *See id.* at 388. For example, the ALJ should consider the reliability of hearsay, its importance, the availability of similar evidence, the reason for a declarant's unavailability, and the importance of cross-examination. *Id.* But the ALJ's proceedings must achieve substantial justice. *Id.*

**¶21** Here, the ALJ sustained the hearsay objections and then denied the offer of proof, concluding that the proffered testimony 1) was cumulative and 2) did "not support a factual determination that the unknown individual was COVID positive." The ALJ reasoned that it had considered Lynn Craig's testimony about Sergeant Craig's meeting with the unknown person who coughed in his office. But the ALJ allowed that testimony only for Sergeant Craig's mental state. The testimony was admitted for consideration that Sergeant Craig was concerned about COVID-19 exposure, not for the proposition that Sergeant Craig met with a co-worker who was coughing in his office and that the person later tested positive for COVID-19. Similarly, Dr. Smith considered the testimony when formulating his expert opinion about causation, but the ALJ still had not admitted the testimony for its truth. The testimony was not cumulative because it was admitted for a different purpose. *Cf. Felipe v. Theme Tech Corp.*, 235 Ariz. 520, 526, ¶ 22 (App. 2014) (Evidence is cumulative if it is more evidence of the same character and supports a fact already established by other evidence.).

**¶22** Lynn Craig and Shepard would have testified that they were told the unknown co-worker tested positive for COVID-19 shortly after

meeting with Sergeant Craig. Even though the text message from Sergeant Craig's brother supported that someone in the office had COVID-19, the proffered testimony would add that the coughing person who met with Sergeant Craig tested positive. Such testimony would be relevant to determining whether Sergeant Craig was exposed to a COVID-19-positive individual at work. Thus, the proffered evidence would support Dr. Smith's causation theory, which the ALJ found less probable than Dr. Brooks's theory.

**¶23** We will not presume that the Commission reached the correct result if it erroneously excluded important evidence on technical grounds. *See Gordon*, 23 Ariz. App. at 460-61; *Cash v. Indus. Comm'n*, 27 Ariz. App. 526, 533 (1976). Erroneously excluding evidence in an Industrial Commission case is harmless only if the evidence "could not have swayed the result." *Horan*, 167 Ariz. at 326; *see also Gordon*, 23 Ariz. App. at 460 ("[R]eversible error is more likely to occur by the exclusion of admissible evidence than the inclusion of incompetent evidence."). The City asserted at oral argument that even if it were error for the ALJ to sustain its hearsay objections, the error was harmless. As explained, the testimony could have changed the result if heard and found credible.

**¶24** The ALJ may assess witness credibility and the weight of a witness's testimony. *Koval v. Indus. Comm'n*, 23 Ariz. App. 277, 279 (1975). But "it is almost impossible" to make a credibility judgment "from a written record." *Brooks v. Indus. Comm'n*, 24 Ariz. App. 395, 397 (1975). Without hearing the testimony, the ALJ concluded that the evidence would not support a factual determination that the unknown individual had COVID-19. But if credible, the testimony *could* have swayed the result. *See Horan*, 167 Ariz. at 326. Thus, the ALJ's evidentiary rulings did not achieve substantial justice. *See* A.R.S. § 23-941(F).

## CONCLUSION

**¶25** We set aside the award.



AMY M. WOOD • Clerk of the Court
FILED:    TM