492 P.2d 1175

Dorothy Irene PAIS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Starrett's, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 10699–PR.

Supreme Court of Arizona,
In Banc.

Jan. 14, 1972.

Gorey & Ely by Joseph M. Bettini, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent.

Robert K. Park, Chief Counsel, by Cecil A. Edwards, Jr., Phoenix, for respondent carrier.

CAMERON, Justice.

This court granted the petition of Dorothy Irene Pais for review of the decision of the Court of Appeals, Pais v. Industrial Commission, 15 Ariz.App. 428, 489 P.2d 275 (1971), which affirmed an award of the Industrial Commission finding temporary disability only.

We are called upon to determine whether the testimony of a psychiatrist based solely upon a file review is substantial evidence.

The facts necessary for a determination of this matter are as follows. Petitioner, Dorothy Irene Pais, a 52 year old seamstress, while within the scope of her employment injured her left hand on 7 October 1967. Petitioner continued to complain of pain and disability and was referred to Dr. R. A. Huger, a psychiatrist, in December of 1967. She was also examined by Dr. John H. Ricker, an orthopedic specialist with a sub-specialty in hands. On 23 February 1968 the Commission issued its findings and award for temporary disability finding that the petitioner had no permanent physical or mental disability resulting from the accident. This award was protested and request for hearing was filed, alleging a continuous psychiatric disability.

Prior to this hearing and at the request of the State Compensation Fund, Dr. William McGrath, a psychiatrist, submitted a one-page report entitled "File Review." Dr. McGrath had previously examined the petitioner in 1965. Dr. McGrath's report, dated 25 November 1968, concluded:

"Comment: A review of the file, with particular reference to the accident of 10–7–67 (BE 44731) tends to reinforce rather dramatically our opinion of 10–26–65; namely, that the patient consciously and unconsciously strives to relate a variety of auto-suggested or psychophysiological complaints to a seemingly trivial but compensable injury. One might question whether this could be classified as a psychiatric disorder. In any event, the effect of a minor accident is of lasting duration not in fact but in the patient's wishful thinking."

At the hearing Dr. Ricker testified:

"Q At that time, Doctor, what were her subjective complaints?

"A Well, pain in her left hand over the entire hand radiating up her arm to her shoulder, inability to straighten her fingers out well, and some kind of a band in her palm. She also said that her nerves were bad.

"Q I take it again you found no objective sign as to the cause for these complaints, is that so?

\* \* \* \* \* \*

"A That is so. I find, however, she does have a ridge in the palm of her hand which she had complained of. That was the only objective finding at that time.

\* \* \* \* \* \*

"Q Doctor, since you find no physical cause for this phenomenon, can you tell us, is it probable that the cause is malingering or something like that or desire to deceive?

"A I am not quite sure exactly what 'malingering' means. If it means willful intent to increase disability or show disability, I would say not. I am sure it is not malingering.

"Q Then what we are left with, Doctor, would be some kind of a mental state which induces this problem, is that right?

"A I would suspect so, although I am not a psychiatrist, so I couldn't answer that truthfully.

"Q I realize your specialty, which I very much respect, as you know, Doctor. But this actually was your final conclusion, was it not, Doctor, that the problem as far as you can see—is the problem as far as you can see real to Mrs. Pais?

"A Oh, I think it is, yes.

"Q Is this based upon your experience of seeing thousands or at least hundreds and hundreds of people in hand matters?

"A Yes."

Dr. Raymond A. Huger, M. D., a psychiatrist, testified:

"Q Do you feel that she had an underlying or pre-existing personality problem?

"A Yes, I do.

"Q Do you feel that this underlying personality problem was aggravated by the accident in question?

"A I think it was.

"Q Do you feel that this aggravation was a factor in bringing about the condition that you found to exist as of the time of the discharge?

"A Yes."

On cross-examination the Doctor testified:

"Q So I guess, then, Doctor, it is fair to state that, at the time you saw her, at least, she was suffering from some sort of psychoneurotic disorder; is that correct?

"A Correct.

\* \* \* \* \* \*

"Q \* \* \* Have you had occasion at any time in your professional career to have before you a case history of a person with all pertinent information with regard to background and so forth?

"A You mean having seen the patient?

"Q Without ever having seen the patient.

"A. No. I wouldnt' say that would be a very wise thing to do."

Dr. McGrath testified over objection of the attorney for the petitioner. He stated as follows:

"Q Doctor, have you seen Mrs. Pais since the second injury, or was it strictly a file review?

"A I have not seen her, and it was strictly a file review."

And on cross-examination he testified as follows:

"Q Doctor, I take it you have not physically examined this lady's hand at all, is that correct?

"A That is correct.

\* \* \* \* \* \*

"Q According to the report he [Dr. Huger] concluded the painful hand resulted in emotional and depressive reactions which seemed to result from this accident. Doctor, do you consider that your file review should be more cogent to the Commission than the opinion of a man who observed her in the hospital for a week's time?

"A I think in context the file review could be compared with or considered as logically valid, yes.

"Q In other words, the file review might be more compelling of an intellectual assent than the opinion of someone who had observed her for a week's time, is that correct?

"A In context, I think so, yes."

We have stated this day that a mere file review and comment on the evidence is not substantial evidence on which the Commission may base a conflict of medical testimony, when compared with contrary testimony of attending or examining physicians unless it has been clearly shown that a physical examination would not be of any conceivable benefit. Rutledge v. Industrial Commission, 108 Ariz. 61, 492 P. 2d 1168 (1972); Condon v. Industrial Commission, 108 Ariz. 65, 492 P.2d 1172 (1972). In the case at bar, we have a situation wherein the expert, Dr. McGrath, is attempting to diagnose the petitioner's present mental and physical condition without physically examining the petitioner, basing his opinion upon an examination some three years previous and a file review. Dr. McGrath not only disagrees with the diagnosis of the examining physicians, one also a psychiatrist, as to petitioner's condition, but as to causation as well. We can think of few cases in the field of medicine wherein an actual physical examination of the patient would be more beneficial than in psychiatric evaluation. Psychiatric evaluation of a patient is concerned not only with the "science" of psychiatry but also the "art" of examination. We hold that Dr. McGrath's testimony was not legally substantial because of the failure to personally examine the claimant and the Industrial Commission could not, under the circumstances of this case, rely upon his testimony for the pur-

pose of finding a conflict in the medical evidence. Anything in the prior cases of Piepkorn v. Industrial Commission, 9 Ariz. App. 532, 454 P.2d 580 (1969) and Vaughn v. Industrial Commission, 13 Ariz.App. 532, 478 P.2d 530 (1971) to the contrary is by this opinion disapproved.

The opinion of the Court of Appeals is vacated, 15 Ariz.App. 428, 489 P.2d 275 (1971), and the award of the Industrial Commission is set aside.

HAYS, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.