526 P.2d 1274

Thelma **GOLDSTEIN,** widow of Harry A. Goldstein, Deceased, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona, Respondent,

Tucson Public Schools District No. One, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 948.

Court of Appeals of Arizona,
Division 1, Department B.

Oct. 10, 1974.
Rehearing Denied Nov. 12, 1974.
Review Denied Jan. 8, 1975.

Lawrence Ollason, Ltd., Tucson, for petitioner.

Edward F. Cummerford, Chief Counsel, William C. Wahl, Jr., former Chief Counsel, The Industrial Commission of Arizona by Richard E. Taylor, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, by George B. Morse, Tucson, for respondents employer and carrier.

OPINION

JACOBSON, Chief Judge.

The question presented to this court is whether the medical evidence supports the Industrial Commission's finding that the deceased's death was not causally related to his employment.

On January 18, 1972 petitioner Thelma Goldstein filed a Widow's Claim for Compensation with the Industrial Commission of Arizona, claiming benefits for her husband's death on February 16, 1971 while he was employed as a schoolteacher by the Tucson Public Schools—District No. One. She claimed:

"A massive asthma attack, due to the long hours he spent trying to defend himself of the unfounded charges, the

emotional involvement the worry and stress from the harrassment by a minority of his students precipitated a massive asthma attack which resulted in his death."

Following a denial of liability and a timely request for hearing, a formal hearing was held on September 6, 1972 in Tucson. On December 20, 1972 the hearing officer found that the applicant had "failed to sustain the burden of proof imposed upon her by law" by failing to prove by a reasonable preponderance of the evidence that a recognizable causal connection existed between the employment, the industrial injury and the death. A requested review of this decision was completed by the Commission on January 26, 1973 at which time the findings and award denying the widow's claim for death benefits were affirmed. Petitioner then filed for a writ of certiorari with this court to review the award and findings of the Industrial Commission of Arizona.

The facts preceding the death of Harry Goldstein are not in dispute. Goldstein moved from New Jersey to Arizona in 1936 because of an asthma condition. He taught in the graphic arts department at Tucson High School for over 30 years and was so employed on the date of his death. Goldstein had a long-standing class practice of rotating his students through the various positions on the high school publications. In 1970 three black students refused to be rotated. The situation between Goldstein and the students deteriorated and the students were ultimately expelled from Goldstein's class. The three students then charged Goldstein with racism. The situation culminated in a public school board meeting on February 2, 1971 at which time the views of all concerned were aired. Following the meeting, the matter was taken under advisement. A special board meeting was held just a few hours before Goldstein's death at which time the board found that Goldstein had been the victim of lies and fabrication and that the racism charges against him were

unfounded; however, Goldstein died before he was informed of the board's decision. Goldstein's widow claims that the stress and worry caused by these unfounded charges precipitated her husband's death.

Petitioner submitted various lay testimony to the effect that Goldstein's death was caused by the stress of the circumstances surrounding these unfounded charges. Medical testimony was also admitted into evidence at the September 6, 1972 hearing both in the form of direct testimony and by sworn written statements.

Dr. William B. Steen, Goldstein's family physician since the 1940's testified that he was not in attendance at Goldstein's death although he did sign the death certificate and list the cause of death as cardiac arrest due to or as a consequence of asthma. No post mortem examination was held. The doctor testified that he listed this cause of death as "it seemed within a reasonable doubt that he died of asthma" because of Goldstein's past medical history. In the past Goldstein had been hospitalized five times for his asthma, the last time being in November of 1970. The doctor stated that decedent had particular difficulties with infections from colds and could have gone at any time during the entire period the doctor treated him. Dr. Steen had not seen Goldstein alive since November, 1970.

An associate of Dr. Steen's, Dr. Taylor, testified that he pronounced Goldstein dead. Dr. Taylor had not arrived at the Goldstein residence until after Goldstein was dead and could not say what had caused decedent's death.

A sworn statement by Dr. Harmon G. Harrison, a general surgeon, was admitted into evidence along with his testimony at the hearing. Dr. Harrison testified that he was a member of the Tucson High School Board of Education and had seen Goldstein at least once a month since 1961. He had last seen Goldstein at the public school board meeting on February 2, 1971. Dr. Harrison saw Goldstein on this non-professional basis and had never examined or

treated decedent. In his sworn statement of January 24, 1972, Dr. Harrison concluded:

"I have carefully reviewed Mr. Harry Goldstein's medical file from January 10, 1946 until February 16, 1971, and have a knowledge of his bronchial asthma and the effect of ordinary living conditions and stress upon his health, and I am of the opinion that the events leading up to the public hearing of February 2, 1971, and his death two weeks later on February 16, 1971, were directly connected, and that his premature death was caused by the severe emotional stress brought on by accusations against Mr. Goldstein, and by his reaction to them, both emotionally and physically."

Dr. T. L. Petty, a specialist in internal medicine at the University of Colorado Medical Center in Denver, Colorado, also examined the same medical files. At his deposition on August 30, 1972, Dr. Petty testified that while it was apparent from the records that decedent had asthma and heart disease, it was not possible for him to determine whether the events leading up to the public hearing on February 2, 1971 caused the death. Dr. Petty stated that in the absence of an autopsy, he could not determine the cause of death as Goldstein could have died from causes other than his asthma.

An allergy specialist at the University of Colorado School of Medicine in Denver, Dr. David W. Talmage, also reviewed decedent's hospital files. Dr. Talmage was also made aware of the stress and strain incident to Goldstein's employment and especially the events of the few months prior to his death. The doctor was unable to give a medical opinion on the cause of death as he felt the medical records were inadequate. He had no objective data from which to determine the cause of death but would conjecture that it was caused either by Goldstein's asthma based on his prior medical history or by coronary thrombosis because of the suddenness of the death. Dr. Talmage stated it would

have been of considerable help for him to have information of what transpired between the time that Goldstein left school and his expiration at 12:25 the following morning.

In a situation such as this, our review is limited to determining whether the award is justified from the record. Although an award of the Industrial Commission will be set aside if it is not supported by the evidence, Bishop v. Industrial Commission, 94 Ariz. 65, 381 P.2d 598 (1963), it is equally true that such an award will be sustained if it is reasonably supported by the evidence, Micucci v. Industrial Commission, 108 Ariz. 194, 494 P.2d 1324 (1972). In making this determination, the evidence will be viewed in the light most favorable to sustaining the Commission's award, In Re Estate of Bedwell, 104 Ariz. 443, 454 P.2d 985 (1969). In determining whether there is substantial medical evidence to support the Commission's decision in this case, it is necessary to consider Rutledge v. Industrial Commission, 108 Ariz. 61, 492 P.2d 1168 (1972); Condon v. Industrial Commission, 108 Ariz. 65, 492 P.2d 1172 (1972) and Pais v. Industrial Commission, 108 Ariz. 68, 492 P.2d 1175 (1972) together. In all three cases, the testifying physicians merely reviewed the Commission's medical file and commented upon the testimony of the examining physician. In *Pais*, the Supreme Court stated that in the two prior cases decided that same day, it held that:

" . . . a mere file review and comment on the evidence is not substantial evidence on which the Commission may base a conflict of medical testimony, when compared with contrary testimony of attending or examining physicians unless it has been clearly shown that a physical examination would not be of any conceivable benefit. (citing *Rutledge* and *Condon, supra*)," 108 Ariz. at 70, 492 P.2d at 1177.

Under such circumstances, the testimony of such a non-examining expert could not be used to create a conflict in medical testi-

mony or as sufficient evidence to support an award, 108 Ariz. at 67–68, 492 P.2d 1168. The court noted in *Rutledge,* however, that it was an entirely different matter

" . . . for an expert to examine medical records, reports, and (where necessary for a determination of the matter) the petitioner, and then testify on matters peculiarly within his expertise," 108 Ariz. 61, 64, 492 P.2d 1168, 1171.

This portion of *Rutledge* is applicable in this situation as the only examination that would have aided the doctors in forming a medical opinion as to the cause of death would have been an autopsy and none was, in fact, performed. Therefore, the opinions of the doctors, based on a review of decedent's complete medical records from the Tucson Hospital, would be sufficient to create a conflict in medical testimony.

Both Drs. Petty and Talmage based their opinions upon individual reviews of Goldstein's complete medical records. In neither instance did the doctors merely review the Commission's own medically incomplete files then comment upon the testimony of the previous witnesses as was the case in *Rutledge, Condon* and *Pais, supra.* Both doctors were also made well aware of the stressful circumstances preceding Goldstein's death through newspaper and magazine articles. Dr. Petty concluded that based on the data in Goldstein's medical files, it was not possible to determine the cause of death. Dr. Talmage concurred, adding that there was no objective basis upon which to make a determination, especially in the absence of an autopsy. This testimony, then, by two experts based on the medical records and reports on matters peculiarly within their areas of expertise is sufficient to create a conflict in medical testimony.

In our opinion, where, based upon the expertise of one physician, the testimony is that because of the existence of facts A and B, fact C exists, and the second testimony, again based upon the expertise of the physician, that the existence of fact C

is incapable of being determined from the existence of facts A and B, a conflict in expert opinion testimony occurs. Thus, there is a conflict between the testimony of Drs. Petty and Talmage that the medical data was insufficient to support the inference that Goldstein died from an asthma attack precipitated by the stressful circumstances surrounding the unfounded racism charges and Dr. Harrison's conclusion based on a review of the same medical records that this was the cause of Goldstein's death.

As the medical evidence is in conflict, the Court of Appeals will not substitute its own opinion for that of the Commission, Hazlett v. Industrial Commission, 16 Ariz. App. 228, 492 P.2d 724 (1972). The Commission resolved the medical conflict by deciding that the petitioner had failed to sustain her burden of proving a causal connection between decedent's employment as a schoolteacher, the stressful situation surrounding the unfounded racism charges, and his ultimate death. This award is affirmed.

HAIRE, P. J., and EUBANK, J., concur.