205 P.3d 1124

**In re MH 2008–000438.**

**No. 1 CA–MH 08–0017.**

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 10, 2009.

Andrew P. Thomas, Maricopa County Attorney by Anne C. Longo, Geraldine L. Roll, Deputy County Attorneys, Civil Division, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender by Edith M. Lucero, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

PORTLEY, Judge.

¶ 1 Appellant challenges his involuntary treatment order. Specifically, he argues that he was not personally examined by two doctors as required by Arizona Revised Statutes ("A.R.S.") sections 36–501 to –550.07 (2003 and Supp.2008). For the following reasons, we agree and vacate the order.

## FACTS

¶ 2 A petition and application for a court ordered evaluation of Appellant was filed on February 27, 2008. The petition alleged that Appellant was a danger to himself and to others. The application, filed by a Magellan [1] case manager who had met with Appellant the day before, alleged that (1) Appellant had previously admitted to her that he had stopped taking some of his medication prescribed to treat his bipolar disorder; (2) he exhibited symptoms of mania (Appellant had lost thirty pounds, said he needed to talk to the President because he had a solution to the mortgage crisis, and thought he was about to make a lot of money and wanted to buy her car); and (3) he threatened to jump out of her car if she attempted to take him to the hospital.

¶ 3 The court granted the petition and issued orders for detention and evaluation. Appellant was admitted to Magellan's Urgent Psychiatric Center ("UPC") on February 29,

2008. He was transferred to Desert Vista Hospital two days later, where he resumed taking medication to treat his bipolar disorder and was evaluated by Dr. Kamala Premkumar and Dr. Liliane Arenzon.

¶ 4 After the evaluation, Desert Vista's deputy medical director filed a petition for court ordered treatment. The petition alleged that Appellant was persistently or acutely disabled. Attached were the affidavits of Dr. Premkumar and Dr. Arenzon.

¶ 5 At the competency hearing, the court found Appellant "persistently or acutely disabled," in need of treatment, and "unwilling or unable to accept voluntary treatment." He was ordered to complete inpatient/outpatient psychiatric treatment for a period not to exceed 365 days (inpatient limited to 180 days) pursuant to A.R.S. section 36–540 (2003). Appellant appealed, and we have jurisdiction pursuant to A.R.S. sections 12–2101(B) and (I), and section 36–546.01 (2003).

## DISCUSSION

¶ 6 We will not disturb an order for treatment unless it is "clearly erroneous or unsupported by any credible evidence." *Mental Health Case No. MH 94–00592*, 182 Ariz. 440, 443, 897 P.2d 742, 745 (App.1995) (citing *Coconino County No. MH 1425*, 176 Ariz. 525, 528, 862 P.2d 898, 901 (App.1993)). In reviewing the record to determine whether the order is supported by substantial evidence, *see Pima County Mental Health Service Action No. MH–1140–6–93*, 176 Ariz. 565, 566, 863 P.2d 284, 285 (App.1993) (citing *Commitment of an Alleged Mentally Disordered Person MH 91–00558*, 175 Ariz. 221, 224, 854 P.2d 1207, 1210 (App.1993)), "we view the evidence in the light most favorable to sustaining the order." *Cimarron Foothills Cmty. Ass'n v. Kippen*, 206 Ariz. 455, 457, ¶ 2, 79 P.3d 1214, 1216 (App.2003) (citing *Southwest Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, 440, ¶ 2, 36 P.3d 1208, 1210 (App.2001)). We review, however, the application and interpretation of statutes de novo. *In re Jesse M.*, 217 Ariz. 74, 76, ¶ 8, 170 P.3d 683, 685 (App.2007) (citing *In re*

1. Magellan Health Services of Arizona, Inc., is the Regional Behavioral Health Authority of Maricopa County, and manages the publicly funded behavioral health care delivery system.

MH 2006–000749, 214 Ariz. 318, 321, ¶ 13, 152 P.3d 1201, 1204 (App.2007)).

¶ 7 Involuntary treatment proceedings must strictly follow the statutory requirements set forth in A.R.S §§ 36–501 to—550.08. *Maricopa County Superior Court No. MH 2001–001139*, 203 Ariz. 351, 353, ¶ 8, 54 P.3d 380, 382 (App.2002) (citing *Alleged Mentally Disordered Person Coconino County No. MH 1425*, 181 Ariz. 290, 293, 889 P.2d 1088, 1091 (1995)). The process starts with the petition for evaluation. An "evaluation" is defined as:

> a professional multidisciplinary analysis based on data describing the person's identity, biography and medical, psychological and social conditions carried out by a group of persons consisting of not less than the following:
>
> (a) Two licensed physicians, who shall be qualified psychiatrists, if possible ... and who shall examine and report their findings independently....

A.R.S. § 36–501(12) (Supp.2008). An "examination" is defined as "an exploration of the person's past psychiatric history and of the circumstances leading up to the person's presentation, a psychiatric exploration of the person's present mental condition and a complete physical examination." A.R.S. § 36–501(14). If the evaluation determines that as a result of a mental disorder the patient is "a danger to self or to others, is persistently or acutely disabled or is gravely disabled" the medical director at the evaluating agency can file a petition for involuntary treatment. A.R.S. § 36–531(B) (2003). "The petition shall be accompanied by the affidavits of the two physicians who conducted the examinations during the evaluation period." A.R.S. § 36–533(B) (2003). The affidavits "shall be based upon the physician's examination of the patient and the physician's study of information about the patient." *Id.*

¶ 8 The examining physicians must also testify at the competency hearing about their "personal examination" and their opinions as to whether "the patient is, as a result of mental disorder, a danger to self or to others, is persistently or acutely disabled or is gravely disabled." A.R.S. § 36–539(B) (2003). The physicians' affidavits, however, may be submitted to the court in lieu of in-court testimony. *Coconino County No. MH 1425*, 176 Ariz. 525, 528, 862 P.2d 898, 901 (App.1993), *vacated on other grounds*, 181 Ariz. 290, 889 P.2d 1088 (1995).

¶ 9 Here, both affidavits were submitted in lieu of testimony. Appellant, however, called Dr. Premkumar to testify at the competency hearing and cross-examined her about the contents of her affidavit. Dr. Premkumar testified that Appellant was asleep when she tried to examine him and she was unable to wake him. She further testified that she attempted to examine him an hour and a half later but "he was too sleepy" and "would not cooperate" and wake up for the examination. She admitted, however, that his medication's side-effects most likely contributed to Appellant's inability to engage in the examination.

¶ 10 During her testimony, Dr. Premkumar conceded that she had no personal knowledge of Appellant's condition; that she did not conduct a physical exam; and that she did not attempt to examine him when he later awoke "because of the time constraints." Even though she would have preferred to "have waited ... [to] go back another day" and examine him after the effects of the medication had dissipated, she completed the affidavit "knowing that he had received [ ] medication" and that the medication could have interfered with Appellant's ability to interact with her.

¶ 11 She explained that, as a result, she did not examine Appellant's mental state or personally observe any physical behavior that may have indicated the presence of mental illness. Consequently, her affidavit was not based on a personal examination but on information she received from reviewing the petition and the records of the evaluation previously conducted at UPC.

¶ 12 Appellant contends that Dr. Premkumar did not examine him as required by statute, and, as a result, the State's evidence is insufficient to sustain the court's order.

¶ 13 The statute does not distinguish be-

tween an examination and a "personal"[2] examination. A.R.S. § 36–501. Under rules of statutory interpretation, we read a statute as a whole and "give meaningful operation to all of its provisions." *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991) (citing *Kriz v. Buckeye Petroleum Co.*, 145 Ariz. 374, 377, 701 P.2d 1182, 1185 (1985)). We also avoid a construction which would produce an absurd result. *Ariz. Dep't of Revenue v. Raby*, 204 Ariz. 509, 511, ¶ 15, 65 P.3d 458, 460 (App.2003) (citing *Knight Transp. Inc. v. Ariz. Dep't of Transp.*, 203 Ariz. 447, 452, ¶ 22, 55 P.3d 790, 795 (App.2002)). If different sections of a statute use identical language, the language should be read consistently. *Wyatt*, 167 Ariz. at 284, 806 P.2d at 873 (citing *State v. Oehlerking*, 147 Ariz. 266, 268, 709 P.2d 900, 902 (App. 1985)).

¶ 14 We conclude that A.R.S. § 36–533 requires the physician to personally examine the patient. To require a personal examination only if the physician testifies at the hearing, and not if the affidavit is substituted for the testimony, would result in an illogical and nonsensical result. In addition, because "a complete physical exam" is a part of the statutory definition of an "examination," it too must be conducted personally.[3] *See* A.R.S. § 36–501(14).

¶ 15 Case law supports this interpretation. In an analogous workmen's compensation case, we recognized that "a mere file review and comment on the evidence is not substantial evidence on which the [court] may base a conflict of medical testimony, when compared with contrary testimony of attending or examining physicians unless it has been clearly shown that a physical examination would not be of any conceivable benefit." *Lockler v. Indus. Comm'n*, 20 Ariz.App. 264, 266, 512 P.2d 27, 29 (1973) (quoting *Pais v. Indus. Comm'n*, 108 Ariz. 68, 70, 492 P.2d 1175, 1177 (1972)) (holding physician's testimony admissible to determine if stroke was a result of job related exertion).

¶ 16 The requirement for two physicians' independent examinations is more than

a "conceivable benefit." The statute's purpose, "to prevent professional mental health evaluators, whether consciously or otherwise, from simply ratifying or 'rubber stamping' one another's findings," *Commitment of Alleged Mentally Disordered Person*, 181 Ariz. 290, 292, 889 P.2d 1088, 1090 (1995), requires it. Furthermore, in *Pais*, our supreme court stated, "[w]e can think of few cases in the field of medicine wherein [an] actual physical examination of the patient would be more beneficial than in psychiatric evaluation. Psychiatric evaluation of a patient is concerned not only with the 'science' of psychiatry but also the 'art' of examination." 108 Ariz. at 70, 492 P.2d at 1177 (reviewing claim for emotional and depressive reaction to hand injury); *see also Maricopa County Superior Court No. MH 2002–000767*, 205 Ariz. 296, 299, ¶ 14, 69 P.3d 1017, 1020 (App.2003) (recognizing that observations made during a psychiatric examination contain a subjective element).

¶ 17 Based on the language of the statute and relevant case law, it is clear that a physician who examines a person who has been court-ordered for an evaluation or treatment must personally physically examine the person. The doctor must use both the art of examination with the science of psychiatry in rendering a diagnosis and opinion.

¶ 18 The State argues that Appellant willfully refused to participate in Dr. Premkumar's examination, and, as a result, all statutory requirements were met. While a doctor is not required to engage a confrontational patient or physically restrain the patient in order to conduct the examination, *Pima County Action No. MH–1140–6–93*, 176 Ariz. at 568, 863 P.2d at 287, there is no evidence that Appellant was confrontational, needed physical restraint, or willfully refused the examination. *See also In re MH 2007–001236*, 1 CA–MH 07–0025, slip op. at ¶¶ 19, 23, 2008 WL 3906374 (Ariz.App. Aug. 26, 2008) (finding doctor's review of uncoopera-

---

**2.** *Webster's Ninth New Collegiate Dictionary* defines "personal" as "(a) done in person without the intervention of another, also: proceeding from a single person (b) carried on between individuals directly." 877 (1988).

**3.** In this context a physical exam is not the typical annual physical but a component of a psychiatric examination, which includes observing the patient's demeanor and physical presentation, and can aid in diagnosis.

tive patient's records in lieu of "full comprehensive evaluation" insufficient to grant civil commitment in part because it did not amount to a reasonable degree of medical certainty as to patient's condition); *MH 94-00592*, 182 Ariz. at 446, 897 P.2d at 748 (dismissing petition for court ordered treatment because there was no evidence that the examining physician attempted additional evaluations or provided evidence that such attempts would be fruitless). Time constraints and the effects of the medication prevented Dr. Premkumar from personally examining Appellant. Consequently, we find that Dr. Premkumar did not examine Appellant and, as a result, the proceedings did not strictly comply with the statutory requirements.[4]

## CONCLUSION

¶ 19 Based on the foregoing, we vacate Appellant's involuntary treatment and commitment order.

CONCURRING: JON W. THOMPSON and PETER B. SWANN, Judges.

**4.** Appellant also argues Dr. Premkumar did not explain the advantages and disadvantages of accepting treatment or any alternatives to the treatment offered as required by § 36–501(33)(b) and supporting case law. *See, e.g., Pima County Action No. MH–1140–6–93*, 176 Ariz. at 567, 863 P.2d at 286. Because the issue was not raised below, we will not consider it. *Id.* at 568, 863 P.2d at 287 (citing *Stewart v. Mutual of Omaha*, 169 Ariz. 99, 108, 817 P.2d 44, 53 (App.1991)).