216 P.3d 1194

STATE of Arizona ex rel. Andrew P.
THOMAS, Maricopa County
Attorney, Petitioner,

v.

The Honorable Sally S. DUNCAN, Judge of
the Superior Court of the State of Ari-
zona, in and for the County of Maricopa,
Respondent Judge,

Joel Randu Escalante–Orozco,
Real Party in Interest.

No. 1 CA–SA 09–0144.

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 3, 2009.

As Amended Nov. 6, 2009.

Andrew P. Thomas, Maricopa County Attorney by Terri L. Clarke, Deputy County Attorney, Burt A. Jorgensen, Deputy County Attorney, Phoenix, Attorneys for Petitioner.

James J. Haas, Maricopa County Public Defender by Bobbi Falduto, Deputy Public Defender, Stephen Whelihan, Deputy Public Defender, Phoenix, Attorneys for Real Party in Interest.

## OPINION

PORTLEY, Judge.

¶ 1 We are asked, in this special action, to determine whether the trial court abused its

discretion by failing to order a prescreening psychological expert to independently determine the defendant's intelligence quotient ("IQ").[1] We find that the court properly appointed an expert to conduct a prescreening examination, but erred when it limited that examination to a review of prior tests.

## FACTS & PROCEDURAL HISTORY

¶ 2 Joel Randu Escalante–Orozco ("Defendant") was indicted on one count of first-degree murder, two counts of sexual assault, and one count of first-degree burglary. The State filed a notice of intent to seek the death penalty ("Notice") on May 6, 2008.

¶ 3 More than a year later, the trial court ordered Defendant to submit to IQ testing pursuant to Arizona Revised Statutes ("A.R.S.") section 13–753(B) (Supp.2008).[2] Defendant moved to dismiss the Notice and objected to the order because he had been previously evaluated by licensed psychologist, Dr. Francisco Gomez, Ph.D ("Dr. Gomez"), for mitigation purposes. Defendant argued that Dr. Gomez's evaluation was sufficient to establish that his IQ was less than seventy[3] and any additional testing could result in inaccurate higher scores because of the practice effect.[4]

¶ 4 At a subsequent hearing, the court appointed a prescreen evaluator, Dr. Julio Ramirez ("Dr. Ramirez"), to review Dr. Gomez's findings and determine if Dr. Gomez's testing complied with the relevant standards or whether additional testing was needed. The court also prohibited Dr. Ramirez from conducting any further independent IQ testing unless specifically ordered by the court.

---

**1.** Intelligence quotient is not defined by statute, but is generally defined as "a number used to express the apparent relative intelligence of a person determined by dividing his mental age as reported on a standardized test by his chronological age and multiplying by 100." Webster's Ninth New Collegiate Dictionary 629 (1990).

**2.** The court's minute entry refers to A.R.S. § 13-703.02. This section was renumbered to § 13-753, effective January 1, 2009. We refer to the current version of the statute throughout this Opinion.

**3.** In addition to administering an IQ test, Dr. Gomez's examination included twelve hours of interviews with the Defendant at the Maricopa County Jail on November 18–19, 2008, and March 25, 2009, and interviews with Defendant's two sisters and his second grade teacher.

**4.** The practice effect occurs when a person performs better on a test because he or she has taken it before. *U.S. v. Nelson*, 419 F.Supp.2d 891, 898 n. 8 (E.D.La.2006); *People v. Pulliam*, 206 Ill.2d 218, 276 Ill.Dec. 319, 794 N.E.2d 214, 219 (2002).

¶ 5 The State subsequently filed this special action and asserted that the trial court's order violated the statutory requirements for determining in a capital case whether a defendant is mentally retarded.

## SPECIAL ACTION JURISDICTION

¶ 6 We accept special action jurisdiction if the parties do not have a plain, adequate, or speedy remedy by appeal. Ariz. R.P. Spec. Act. 1(a); *see State v. Arellano*, 213 Ariz. 474, 476, ¶ 4, 143 P.3d 1015, 1017 (2006) (court of appeals can exercise special action jurisdiction to review issues concerning mental retardation proceedings in capital litigation). We are also "more likely to accept special action jurisdiction when the issue is likely to arise again." *Demarce v. Willrich*, 203 Ariz. 502, 504, ¶ 5, 56 P.3d 76, 78 (App.2002). Because this is an issue of first impression that is capable of repetition and the State lacks a remedy on appeal, we accept jurisdiction.

## STANDARD OF REVIEW

¶ 7 We review issues of statutory interpretation de novo. *State v. Peek*, 219 Ariz. 182, 183, ¶ 6, 195 P.3d 641, 642 (2008). When interpreting a statute, our goal is to give effect to the Legislature's intent. *Id.* at 184, ¶ 11, 195 P.3d at 643. We look first to the language of the statute because it is the best indication of the Legislature's intent. *Id.* If "the language is clear and unequivocal, it is determinative of the statute's construction." *State v. Hansen*, 215 Ariz. 287, 289, ¶ 7, 160 P.3d 166, 168 (2007) (quoting *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 296, ¶ 8, 152 P.3d 490, 493 (2007)). We must also give effect to each word or phrase and apply the "usual and commonly understood meaning unless the legislature clearly intended a different meaning." *Bilke v. State*, 206 Ariz. 462, 464–65, ¶ 11, 80 P.3d 269, 271–72 (2003) (quoting *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990)).

¶ 8 Finally, we "must read the statute as a whole, and give meaningful operation to all of its provisions." *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). Different sections of a single statute should be interpreted consistently. *Id.* If we must look further to determine legislative intent, we may also consider "the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose." *Id.*

## DISCUSSION

¶ 9 The State argues that the refusal of the trial court to appoint a prescreening psychological expert to personally evaluate Defendant contravenes the procedure described in A.R.S. § 13–753. The Defendant contends that the order complies with the statute because the evaluation and IQ determination by Dr. Gomez satisfied the prescreening requirement.

¶ 10 Section 13–753 was enacted in 2001 as part of Arizona's statutory scheme, which bans capital punishment of mentally retarded offenders and establishes a procedure for determining whether a defendant is mentally retarded. A.R.S. § 13–753; *State v. Dann*, 206 Ariz. 371, 374–75, ¶ 15, 79 P.3d 58, 61–62 (2003). A year later, the United States Supreme Court held that capital punishment of a mentally retarded offender violates the Eighth Amendment of the United States Constitution. *Atkins v. Virginia*, 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). As a consequence, if the court finds that a defendant is mentally retarded, then the State is not permitted to seek the death penalty. A.R.S. § 13–753(A), (H).

¶ 11 Section 13–753 also describes the process for determining whether a defendant is mentally retarded. A.R.S. § 13–753(B).[5] The statutory definition of mental retardation includes, among other factors, a defendant's IQ. A.R.S. § 13–753(K)(3), (5). Ac-

---

5. The process is as follows:
If the state files a notice of intent to seek the death penalty, the court, unless the defendant objects, shall appoint a prescreening psychological expert in order to determine the defen-

cordingly, once a notice of intent to seek the death penalty is filed, the trial court must appoint a prescreening psychological expert to determine a defendant's IQ. A.R.S. § 13–753(B). If a defendant's IQ is seventy-five or less, the court must appoint additional experts to evaluate the defendant and hold a subsequent hearing to determine whether the defendant is mentally retarded as defined by statute. A.R.S. § 13–753(D), (G).

¶ 12 The parties raise two issues concerning the prescreening process: (1) does the statute require the court to appoint an expert; and (2) does the prescreening psychological expert have to personally test the defendant?

## A. Appointment of a Prescreening Psychological Expert

■ ¶ 13 We look first to the plain language of the statute. The statute states that "the court ... shall appoint a prescreening psychological expert." A.R.S. § 13–753(B). The word "shall" makes it clear that the trial court must appoint a prescreening psychological expert unless the defendant objects. *Id.* There is no indication in the language of the statute that the court has any discretion to not appoint an expert to prescreen the defendant. Thus, the trial court is required to sua sponte initiate the process once a notice of intent to seek the death penalty is filed.

¶ 14 Our interpretation is supported by Arizona Rule of Criminal Procedure 11.2(a), which addresses evaluation of a defendant's mental condition. *See Patterson v. Mahoney,* 219 Ariz. 453, 456, ¶ 9, 199 P.3d 708, 711 (App.2008) (rules and statutes should be interpreted harmoniously). Rule 11.2(a) states that "[i]n a capital case, the court *shall order* the defendant to undergo mental health examinations as required under A.R.S. § 13–[753]." (Emphasis added.) Like the statuto-

ry language, it mandates that the court order an examination and leaves no room for discretion.

¶ 15 Here, the State filed the Notice on May 6, 2008. The trial court, after handling motions to remand, a motion to dismiss, and accounting for the rotation of judges, ordered IQ testing on May 19, 2009, but did not initially appoint a prescreening expert. Defendant, who had been examined by his expert, objected to additional testing. He argued that his expert's independent evaluation satisfied the prescreening requirement. The trial court disagreed, and subsequently appointed Dr. Ramirez as the prescreening psychological expert, thus satisfying the statutory requirements.

## B. Prescreening Psychological Expert's Evaluation

¶ 16 Dr. Ramirez was not authorized by the court to evaluate the Defendant. Instead, the court ordered Dr. Ramirez to review Dr. Gomez's evaluation and determine if additional evaluation would be necessary.

■ ¶ 17 The prescreen statute does not support the trial court's order. Section 13–753(B) provides that the expert must determine a defendant's IQ "using current community, nationally and culturally accepted intelligence testing procedures." A.R.S. § 13–753(B). The requirement that the expert use "testing procedures" that meet certain criteria clearly mandates that the expert must apply those testing procedures, and not merely review previous IQ tests. Reviewing prior test results does not logically equate to administering the test. *See In re MH 2008–000438,* 220 Ariz. 277, 280, ¶ 17, 205 P.3d 1124, 1127 (App.2009) (holding that psychiatrist was required to personally examine a patient and could not merely review records

dant's intelligence quotient using current community, nationally and culturally accepted intelligence testing procedures. The prescreening psychological expert shall submit a written report of the intelligence quotient determination to the court within ten days of the testing of the defendant. If the defendant

objects to the prescreening, the defendant waives the right to a pretrial determination of mental retardation status. The waiver does not preclude the defendant from offering evidence of the defendant's mental retardation in the penalty phase.
A.R.S. § 13–753(B).

because a "doctor must use both the art of examination with the science of psychiatry in rendering a diagnosis and opinion" of a mentally ill defendant). Moreover, Defendant has not demonstrated that a review of previous test results is a "current community, nationally and culturally accepted intelligence testing procedure[ ]." A.R.S. § 13–753(B).

¶ 18 The statute also specifically states that the expert must submit his or her written report to the trial court "within ten days of the testing of the defendant." A.R.S. § 13–753(B). Again, this indicates that the prescreening psychological expert must administer the test, and prepare and submit the report to the court.

¶ 19 Here, even though the trial court was concerned about a possible practice effect, we note, without addressing the validity of the concern, that multiple tests are required by statute before the court can find that a defendant is mentally retarded. Not only does a defendant have to be tested and evaluated by a prescreening psychological expert, subsection 13–753(D) also requires examination and testing for mental retardation by another expert if the IQ is found to be less than seventy-five. The statutory testing is required. After the testing has been performed, a defendant may argue that the practice effect impacted the results.

¶ 20 Finally, we note that having the Defendant evaluated for mitigation purposes is a strategy decision left to defense counsel. Contrary to the State's argument, defense counsel has no obligation to inform the trial court or the State in advance about plans to evaluate Defendant. Once an evaluation is completed, if the defense decides it will use the results, then the duty to disclose would apply. *See* Ariz. R.Crim. P. 15.2(h)(1)(c).

## CONCLUSION

¶ 21 The language of A.R.S. § 13–753(B) requires a trial court to appoint a prescreening psychological expert, who must personally test a defendant in order to determine a defendant's IQ.

¶ 22 For the foregoing reasons, we accept jurisdiction and grant relief by vacating the order preventing Defendant from being tested and remanding to the trial court for proceedings consistent with this Opinion.

CONCURRING: MICHAEL J. BROWN and MARGARET H. DOWNIE, Judges.