NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE: MH2020-003246

---

No. 1 CA-MH 20-0079
FILED 1-14-2021

---

Appeal from the Superior Court in Maricopa County
No.  MH2020-003246
The Honorable Amy Kalman, Judge *Pro Tempore*
The Honorable Elisa C. Donnadieu, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate, Phoenix
By David C. Lieb
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Anne C. Longo
*Counsel for Appellee*

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Cynthia J. Bailey and Judge Lawrence F. Winthrop joined.

**M c M U R D I E**, Judge:

**¶1** Appellant appeals from a superior court treatment order requiring him to undergo involuntary outpatient and inpatient treatment, with the inpatient treatment not to exceed 180 days. For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

**¶2** From February to April 2020, Appellant communicated over the phone with his parents, who lived out of state. He described suicide attempts to both of his parents, including in a March 13 call when he told his father that he had attempted to kill himself 12 times. Both parents advised him to seek medical treatment, but Appellant refused. From April 19 to 20, Appellant sent his father 202 texts describing a delusion he had about his probation officer in which she bandaged his foot. He requested that his father provide him room and board. During this period, Appellant repeatedly told his father that he did not have access to his medication and depended on his father for food, money, and shelter.

**¶3** On April 21, Appellant's father checked Appellant into a hotel. Appellant's father instructed the hotel staff to bill his credit card and charge only the room night to the card. Appellant attempted to charge additional expenses. When the hotel manager refused, Appellant swore at and berated her in a confusing rant that she described as "all over the place." Shortly thereafter, someone summoned paramedics, but they left after Appellant refused to be seen. The next day, Appellant requested another night at the hotel, and the hotel manager told him to call his father. In response, Appellant repeatedly dialed the front desk's phone, demanding the hotel manager's name while berating the staff and threatening to call the corporate office. The argument escalated until

---

[1] We view the facts in the light most favorable to upholding the court's ruling. *In re MH2009-002120*, 225 Ariz. 284, 290, ¶ 17 (App. 2010).

Appellant shouted at the manager and repeatedly left and re-entered the hotel.

¶4            Around this time, Appellant sent texts to his probation officer saying that he would rather kill everyone and himself than go to a halfway house. He also informed her that he had been drinking, and he had a gun with ammunition and three grenades. In response to a call from Appellant's mother, officers, including Detective Erika T. Johnson, arrived and searched his belongings but found no weapons. Appellant initially denied he had made the statements regarding the gun but later admitted to them. Detective Johnson applied for an involuntary evaluation and an emergency admission for evaluation to a recovery response center. Johnson claimed that Appellant had a mental disorder and was a danger to himself and others. Based on these applications, Adam Rodriguez, PMHNP-BC, petitioned for a court-ordered evaluation.

¶5            On April 24, Appellant was admitted to the hospital. On the day of admission, Dr. Hadziahmetovic made two attempts about an hour and a half apart to interview Appellant. Dr. Silvestrini attempted to interview Appellant on April 25, and then again, the next day. Appellant refused all four interview attempts. Neither doctor made additional attempts to interview Appellant, noting their belief that repeated attempts to interview an unwilling patient may lead the patient to be less willing to undergo treatment.

¶6            Appellant's reason for refusing the interviews was based on a claimed illness and cold symptomology.[2] Appellant was treated for pain, gastric upset, sore throat, and nasal congestion. Appellant told Dr. Hadziahmetovic that he was "sick like a dog," and the doctor observed Appellant's congestion and upper respiratory symptoms. Despite Appellant's illness, both doctors concluded that he refused to participate because he did not want to, not because he was unable. This was in part because of observations they made of Appellant before and after attempting to interview him. Dr. Hadziahmetovic reported observing Appellant speaking with a nurse on one occasion before an attempted interview, and Dr. Silvestrini made a similar observation during both of her attempted interviews.

---

[2]      Because of his symptoms and complaints, Appellant was tested for COVID-19 three times. The results were negative.

¶7     Dr. Silvestrini prepared an affidavit affirming that Appellant had been diagnosed with bipolar disorder (most recent episode depressed) and antisocial personality disorder. And Dr. Hadziahmetovic prepared an affidavit attesting that Appellant had been diagnosed with bipolar disorder (most recent episode manic) and methamphetamine use disorder. Both doctors concluded that Appellant was a danger to himself and others and persistently or acutely disabled due to his disorders. The affidavits were based on personal observations of Appellant's behavior, the information in Rodriguez's petition, and Appellant's records.

¶8     On April 29, 2020, the superior court entered a detention order for treatment and scheduled a hearing on May 4. On the day of the hearing, a psychiatric medical provider submitted a 72 Hour Medication Affidavit that detailed the administration of Appellant's medications after he was admitted to the hospital. At the hearing, Appellant's counsel stipulated to the 72 Hour Medication Affidavit's admission but not to any "hearsay or conclusions [in]" the doctors' affidavits.

¶9     The court heard the testimony of both doctors, Appellant's parents, and the hotel manager. This testimony included an assertion by Dr. Hadziahmetovic that Appellant had never asked him to return for another interview. Dr. Silvestrini asserted that Appellant had refused the interviews and appeared not to want to participate. She did not comment and was not questioned regarding whether Appellant had offered to be interviewed later. Appellant's counsel moved the court to find that the affidavits were insufficient, arguing that neither doctor based their affidavits on their observations of Appellant and, therefore, the affidavits were a legally insufficient basis for Appellant's court-ordered treatment. The court denied the motion.

¶10     Afterward, Appellant testified. He said he had been taking his medication before hospitalization and could support himself and his family. He admitted that he no longer had access to a car and depended on his parents' financial support. He denied that he had attempted to kill himself or that he had an aversion to doctors. He alleged that on every attempt to interview him, he was "extremely sick." He also alleged that he told the doctors he was sick and asked them to return later.

¶11     The superior court found Appellant's testimony was not credible, "especially" because Appellant said he was willing to take his medication and was taking it. However, the 72 Hour Medication Affidavit indicated that Appellant had refused his Risperdal. The court found that Appellant never offered to participate in another interview. The court

further found by clear and convincing evidence that Appellant had a mental disorder that rendered him persistently or acutely disabled, he needed treatment, and he was unwilling or unable to accept it. The court ordered that he undergo a combined inpatient and outpatient treatment for a maximum of 365 days, with no more than 180 days in inpatient treatment. Appellant appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1) and 36-546.01.

## DISCUSSION

**¶12**        Appellant argues that the superior court erred by ordering him to undergo involuntary treatment based on insufficient evidence. Specifically, Appellant argues that the doctors' affidavits were insufficiently supported under A.R.S § 36-533(B) because the doctors had failed to interview him before drafting them. Appellant maintains this failure means the affidavits failed to meet the statute's requirement that the doctors support their affidavits with the "physician's observations of the patient." We disagree.

**¶13**        A petition for court-ordered evaluation must be accompanied by affidavits of two physicians who "participated in the evaluation" and "shall be based on the physician's observations of the patient and the physician's study of information about the patient." A.R.S. § 36–533(B). But a physician need not "engage in a confrontation with a mentally ill patient." *In re Pima Cty. No. MH-1140-6-93.*, 176 Ariz. 565, 568 (App. 1993); *See In re MH2009-002120*, 225 Ariz. 284, 289, ¶¶ 10–16 (App. 2010) (applying this principle to A.R.S § 36–533(B)); *C.f. In re MH2015-003266*, 240 Ariz. 514, 516, ¶ 10 (App. 2016) (excusing a physical exam requirement "if the patient refuses or other circumstances render compliance impracticable"). Because Drs. Hadziahmetovic and Silvestrini were the only physicians to have drafted the affidavits attached to the petition; both of their affidavits must satisfy A.R.S. § 36–533(B). Because it is undisputed that neither of them interviewed Appellant, the sole issue is whether substantial evidence exhibited that it was impracticable for both physicians to conduct interviews. *See In re MH 2007-001236*, 220 Ariz. 160, 165, ¶ 15 (App. 2008).

**¶14**        "We review the application and interpretation of statutes *de novo* because they are questions of law." *In re MH 2007-001236*, 220 Ariz. at 165, ¶ 15. We strictly construe the civil commitment's statutory requirements to preserve the party's liberty interests. *Id.* Court-ordered treatment must be supported by clear and convincing evidence, and we will affirm an involuntary treatment order supported by substantial evidence. *Id.*

¶15        Appellant cites to *In re MH 2008-000438* to argue that the doctors did not sufficiently attempt to interview him. 220 Ariz. 277, 280–81, ¶ 18 (App. 2009). There, a doctor gave up on conducting a physical exam on a patient after two attempts, the second attempt an hour and a half after the first, because the patient was "too sleepy" to participate. *Id.* at 279, ¶ 9. Although the doctor surmised that the patient's condition was a side-effect of a medication that would have worn off by the next day, she did not make additional attempts because of time constraints relating to her work. *Id.* at ¶¶ 9–10. This court vacated an involuntary treatment order after concluding that the patient's condition did not constitute a willful refusal to participate and that the doctor's time constraints did not allow her to meet the statutory requirement of a physical examination without conducting one. *Id.* at 280–81, ¶¶ 18–19.

¶16        The State relies on *In re MH2009-002120* to argue that both doctors had sufficiently attempted to interview Appellant because he had voluntarily refused each of their two attempts. There, a doctor twice tried to interview a patient who "refused to engage in any meaningful conversation each time." 225 Ariz. 284, 286, ¶ 3 (App. 2010). The patient frustrated the first attempt when he "raised his voice" and "displayed a threatening posture," until the doctor terminated the interview. *Id.* at 288, ¶ 10 (quotation omitted). The patient frustrated the second attempt by refusing to participate and walking away. *Id.* The doctor observed the patient, discussed the matter with the staff, consulted Appellant's medical chart and the patient's court-ordered evaluation petition. *Id.* at 286, ¶ 3. This court concluded that the doctor was not required to do more to show that additional efforts would have been futile. *Id.* at 288, ¶ 12.

¶17        Here, both doctors' testimony indicated that the patient claimed he was sick throughout the time they tried to interview him. After hearing Appellant's testimony, the superior court could have reasonably inferred that Appellant's illness prevented him from participating in the interview, much like the patient in *In re MH 2008-000438*. If so, and if Appellant had asked the doctors to come back when he felt better, additional efforts would likely not have been futile. However, both doctors inferred from Appellant's appearance and observing his conversations with the nurses that he was well enough to be interviewed. Moreover, Dr. Hadziahmetovic, when asked whether Appellant had asked him to return, said he did not. Dr. Silvestrini testified that Appellant refused to participate in the interviews because he did not want to. Therefore, the issue of whether there was sufficient evidence to conclude that additional efforts would have been futile depends on whether the court clearly erred by finding that Appellant's testimony was not credible when he asserted that he was too

sick to participate in an interview or that he indicated he would participate later.

¶18        We will not disturb the superior court's credibility analysis unless it is clearly erroneous. *In re Mental Health Case No. MH 94-00592*, 182 Ariz. 440, 443 (App. 1995); *see In re B.S.*, 205 Ariz. 611, 614, ¶ 5 (App. 2003) ("[G]iving due regard to the court's opportunity to assess witnesses' credibility and demeanor, we will set aside factual findings only if they are clearly erroneous."). "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Kocher v. Dep't of Revenue*, 206 Ariz. 480, 482, ¶ 9 (App. 2003).

¶19        Here, the superior court found that Appellant's testimony was not credible. Substantial evidence supports the court's finding. *See Kocher*, 206 Ariz. at 482, ¶ 9. After finding the doctors' testimony more credible than Appellant's, the court did not err by finding that the doctors' affidavits complied with A.R.S. § 36-533(B).[3]

## CONCLUSION

¶20        We affirm the superior court's involuntary treatment order.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[3]        The State argues that the court's finding that Appellant was persistently or acutely disabled was supported by credible evidence. Because Appellant's challenge to the affidavit relies solely on the doctor's alleged noncompliance, we need not further evaluate the sufficiency of the affidavits.